UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION; and <br><br> AMERICAN CIVIL LIBERTIES UNION FOUNDATION <br><br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; and <br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT<br><br>Defendants. | Civil Action <br><br>Docket No. **11 CIV 3786** <br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |



## INTRODUCTION

1.      Plaintiffs American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU") seek the disclosure and release of government documents from the Defendants, the United States Department of Homeland Security ("DHS") and United States Immigration and Customs Enforcement ("ICE"), pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

2.      Plaintiffs seek documents concerning the government's policy of subjecting individuals to prolonged immigration detention—for months, if not years—without adequate procedures in place to determine whether their detention is justified.  The United States has seen an extraordinary increase in the number of immigration detainees in recent decades.  These individuals are not serving criminal sentences or being punished for wrongdoing; rather, the government is detaining them by the tens of thousands simply to ensure that they are available

for removal from the United States if such removal is ordered and can be effectuated.

3.      In its 2001 landmark decision, *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that indefinite immigration detention raises "serious constitutional concerns," and construed the post-final-order immigration detention statute as authorizing detention only for the period of time reasonably necessary to effectuate removal—a period that it presumed to be limited to six months. 533 U.S. at 682, 699, 701. Yet, ten years after that decision, thousands of immigration detainees continue to languish in immigration jails for periods far exceeding six months. These individuals—some of whom are still fighting their removal cases, others who are merely waiting to be deported—often face deplorable conditions of confinement even worse than those faced by convicted prisoners. Yet minimal, if any, procedures are in place to ensure that their detention is warranted.

4.      Given the great public importance of this issue, the Plaintiffs seek documents to understand better the scope of prolonged immigration detention and its causes. In particular, the Plaintiffs seek documents pertaining to ICE's compliance with the regulatory, statutory, and constitutional limits on such detention, including regulations that were promulgated specifically to implement the Court's holding in *Zadvydas* that an individual against whom a final order of removal has been entered may not be detained beyond the period of time reasonably necessary to effectuate his or her removal.

5.      The ACLU submitted a FOIA request to ICE and DHS on January 13, 2009 (the "First FOIA Request") (a copy of which is attached as **Exhibit A**), seeking government records relating to the prolonged detention of individuals both during and after removal proceedings. Among the records requested were documents relating to the post-order custody review ("POCR") procedures that the government uses to determine whether to detain or release

2

individuals who are subject to a final order of removal, including individuals whose removal orders have been stayed pending judicial review.

6.      Eight months later, on September 30, 2009, ICE responded to the request (the "September 30th Production"), producing approximately 742 pages and two Excel files. In that production, ICE redacted portions of 242 pages, claiming that certain exemptions set forth in FOIA prevented disclosure. However, ICE failed to explain why the claimed FOIA exemptions applied to any of the redacted documents. The unredacted portion of the production did not adequately respond to the First FOIA Request. With respect to many of Plaintiffs' requests, ICE failed to produce any documents at all, claiming, *inter alia*, that it does not have access to the requested information.

7.      ICE's release of the September 30th Production eight months after the ACLU's original request contravened FOIA's provisions requiring agencies to make a determination on any FOIA request within 20 days, 5 U.S.C. § 552(a)(6)(A)(i), and to make records promptly available, 5 U.S.C. § 552(a)(3)(A). Moreover, ICE failed to conduct a reasonable search and to respond adequately to the First FOIA Request, in violation of 5 U.S.C. § 552(a)(3)(C).

8.      The ACLU filed an administrative appeal of ICE's September 30th Production because of those deficiencies. ICE subsequently denied the appeal, broadly citing the FOIA exemptions.

9.      Both before and after filing the appeal, the ACLU repeatedly contacted ICE to obtain clarification of the information ICE produced as well as the reasons why additional responsive documents were not available. ICE continually failed to provide the requested clarification or any response, forcing the ACLU to file two related FOIA requests on September 21, 2010.

10.     On March 4, 2011, ICE responded to one of the ACLU's outstanding FOIA requests with a production of 57 pages and six Excel files (the "March 4th Production"). ICE's response was inadequate in many respects, as detailed below. *See infra*, at ¶¶ 53-71. ICE redacted large portions of the March 4th Production, claiming the portions to be exempt from disclosure pursuant to certain exemptions set forth in FOIA. Moreover, with respect to many of Plaintiffs' requests, ICE stalled by demanding clarifications, even though it had not sought such clarifications for similar items in the First FOIA Request.

11.     On April 26, 2011, ICE produced what it termed its "second and final" set of documents with respect to this outstanding FOIA request of the ACLU. However, many of these documents were identical to documents provided in the March 4th Production and/or are non-responsive. ICE stated that it was withholding certain information pursuant to FOIA exemptions 6, 7(C), and 7(E).

12.     Because ICE conducted an inadequate search and provided an inadequate response to the ACLU's multiple FOIA requests, the ACLU brings this action for injunctive relief and to compel the Defendants' compliance with their obligations under FOIA.

## JURISDICTION AND VENUE

13.     This Court has federal subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). Because this action arises under FOIA against an agency of the United States, this Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402 because the ACLU's principal place of business is located in the Southern District of New York.

## PARTIES

4

14.    Plaintiff American Civil Liberties Union is a nationwide, nonprofit, nonpartisan organization under section 501(c)(4) of the Internal Revenue Code (26 U.S.C. § 501(c)(4)), with more than 500,000 members dedicated to the constitutional principles of liberty and equality. The American Civil Liberties Union is committed to holding the U.S. government accountable to principles of due process and the requirements of the U.S. Constitution, including those principles that bear on detention and other significant deprivations of liberty. The American Civil Liberties Union seeks to improve the quality of justice for all persons, including immigrants, and therefore has a keen interest in the just administration of our nation's immigration laws. The American Civil Liberties Union publishes newsletters, provides news briefings, and publishes and disseminates reports on civil liberties issues, right-to-know documents, and other materials to the public through its communications department. Its material is widely available to the public, including tax-exempt organizations, not-for-profit groups, and law students and faculty, for no cost or for a nominal fee through its public education department.

15.    Plaintiff American Civil Liberties Union Foundation was established in 1987 to expand and enforce the civil rights and civil liberties of immigrants and to combat discrimination against immigrants. The American Civil Liberties Union Foundation is a nonprofit organization under section 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3)) that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties.

16.    In particular, the Immigrants' Rights Project of the American Civil Liberties Union Foundation, which seeks the information at issue in this action, disseminates information through a public website accessible at http://www.aclu.org/immigrants-rights. The website

addresses the civil rights and civil liberties of immigrants, providing updated information on relevant news coverage, documents and other resources, and legal cases impacting the rights of immigrants. The Immigrants' Rights Project of the American Civil Liberties Union Foundation has previously received documents pursuant to FOIA and has immediately made those documents available to the public by posting them on its website.

17.    Defendant DHS is a federal agency with responsibility for securing the nation's borders, in part by enforcing federal immigration laws. DHS forms a part of the executive branch of the United States government and is therefore an "agency" within the meaning of 5 U.S.C. §§ 551(1) and 552(f)(1).

18.    Defendant ICE is an agency within DHS and is responsible for enforcing the nation's federal immigration and customs laws. Enforcement and Removal Operations ("ERO"), a division of ICE, is responsible for the detention of individuals who have been placed in removal proceedings. ERO is responsible for making both initial determinations as to whether individuals should be detained and subsequent custody determinations according to the POCR guidelines. ICE, as a component of DHS, forms a part of the executive branch of the United States government and is therefore an "agency" within the meaning of 5 U.S.C. §§ 551(1) and 552(f)(1).

## FACTUAL BACKGROUND

### The Government's Immigration Detention Authority

19.    The federal government's general authority to detain non-citizens in removal proceedings is set forth in three statutory provisions. 8 U.S.C. § 1226 governs detention prior to the issuance of a final administrative order of removal ("Pre-Final-Order Detention"). In general, Pre-Final-Order Detention under 8 U.S.C. § 1226 is discretionary. *See* 8 U.S.C. §

1226(a) ("an alien *may be* . . . detained pending a decision on whether the alien is to be removed") (emphasis added). However, under certain circumstances, Pre-Final-Order Detention is mandatory. *See* 8 U.S.C. § 1226(c) (stating that the Attorney General "*shall take into custody*" certain categories of non-citizens) (emphasis added).[1]

20.    The issuance of an administratively final order of removal triggers the application of another statutory provision, 8 U.S.C. § 1231, which governs detention following the entry of a final order of removal that is not judicially stayed ("Post-Final-Order Detention").[2] *See* 8 U.S.C. § 1231(a)(1)(B)(ii) (stating that the provisions of § 1231 do not apply when the "removal order is judicially reviewed and if a court orders a stay of removal"). Section 1231 delineates a period of 90 days following the date of an administratively or judicially final order of removal (the "Removal Period") within which the individual must be removed from the United States. 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) mandates the detention of non-citizens during this 90-day Removal Period, while section 1231(a)(6) authorizes discretionary detention beyond the Removal Period for certain classes of non-citizens. 8 U.S.C. § 1231(a)(2), (a)(6).

21.    A third statutory provision, 8 U.S.C. § 1225, governs the Pre-Final-Order Detention of non-citizens who are apprehended upon seeking admission at the border, as well as certain other individuals who are apprehended within two years of entry.

**Prolonged Immigration Detention in the Pre-Final Order and Post-Final Order Contexts**

---

[1]    Effective March 1, 2003, the authority to detain immigrants was transferred from the Attorney General to the Secretary of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, which created the Department of Homeland Security and assigned or transferred to the Secretary of Homeland Security many of the immigration powers previously exercised by the Attorney General. *See also* 6 U.S.C. § 251.

[2]    A stay of removal is generally issued by a court that is reviewing an otherwise enforceable administratively final order of removal. Such stays of removal can be issued by a federal court reviewing a final order or by the agency itself pending further proceedings, such as a decision on a motion to reopen. When stays of removal are in place, the Pre-Final-Order Detention statute, section 1226, applies, not the Post-Final-Order Detention statute, section 1231.

22.    In 2001, the Supreme Court issued its landmark *Zadvydas* decision, which held that indefinite immigration detention under the Post-Final-Order Detention statute, 8 U.S.C. § 1231, raised "serious constitutional concerns." 533 U.S. at 682. As such, the Court construed the Post-Final-Order Detention statute to authorize detention only for the period of time "reasonably necessary to secure removal," *id.* at 699, a period that it presumed to be limited to six months. *Id.* at 701. Once detention exceeds that period, it is no longer authorized unless there is a "significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Even when removal is reasonably foreseeable, continued detention must be justified by a showing that the particular individual is a danger or flight risk. *Id.* at 700.

23.    Nearly ten years after *Zadvydas*, individuals continue to be subjected to immigration detention for periods far in excess of the six months deemed presumptively reasonable by the Court. For instance, in response to a FOIA request by the Associated Press, ICE released data indicating that on the evening of January 25, 2009, at least 4,170 immigration detainees had been held in detention for at least six months, and 1,334 for one year or longer.[3] While these statistics reveal the prevalence of prolonged detention, the justifications for this detention remain unclear. For example, the data does not distinguish between those individuals who are detained while waiting for their removal orders to be effectuated, and those who are still fighting their cases.

**The Post-Order Custody Review Procedures**

24.    In November 2001, the Department of Justice promulgated regulations to implement the *Zadvydas* holding. *See* 8 C.F.R. §§ 241.4, 241.13, 241.14. These regulations

---

[3]    Michelle Roberts, "AP Impact: Immigrants Face Detention, Few Rights," Wash. Post., Mar. 13, 2009. *See generally* American Civil Liberties Union, *Prolonged Immigration Detention of Individuals Who are Challenging Removal* 4 (July 2009), *available at*

created a set of post-order custody review ("POCR") procedures governing the decision to release or to continue detaining an individual against whom a final order of removal has been issued.   Specifically, the POCR procedures set forth criteria for determining whether an individual subject to a final order of removal should be detained or released following the 90-day Removal Period, *see* 8 C.F.R. § 241.4, and whether there is a significant likelihood of removal in the reasonably foreseeable future so as to warrant continued detention. *See* 8 C.F.R. § 241.13.

25.    Since that time, advocates have raised concerns as to the adequacy of the POCR process and whether it satisfies the requirements of *Zadvydas*.   In addition, both independent observers and government oversight agencies have further questioned whether ICE officials are complying with the POCR procedures and providing meaningful review, impartially and on an individualized basis on whether to release or continue detaining immigrants. *See, e.g.*, General Accounting Office, *Immigration Enforcement: Better Data and Controls Are Needed to Assure Consistency with the Supreme Court Decision on Long-Term Alien Detention*, GAO-04-434, at 3-5 (May 2004) (a copy of which is attached as **Exhibit B**) (finding that ICE's database could not identify the detainees entitled to a custody review and that ICE was possibly violating POCR regulations); Dep't of Homeland Security Office of the Inspector General, *ICE's Compliance with Detention Limits for Aliens with a Final Order of Removal from the United States* OIG-07-28 (Feb. 2007) (a copy of which is attached as **Exhibit C**) (reporting on, *inter alia*, ICE's failure to provide custody reviews in a timely manner and its failure to provide them at all in some cases; ICE's failure to provide sufficient guidance to its field officers with respect to compliance with the requirements established by the Supreme Court in   *Zadvydas*; non-uniform practices across field offices; and ICE's ineffective oversight efforts); Kathleen Glynn & Sarah Bronstein, *Systemic Problems Persist in U.S. ICE Custody Reviews for "Indefinite" Detainees*, at 1-2

http://www.aclu.org/files/images/asset_upload_file766_40474.pdf.

(Catholic Legal Immigration Network, Inc. 2005) (a copy of which is attached as **Exhibit D**) (reporting on ICE's poor record keeping, failure to conduct timely custody reviews, staff shortages, lack of communication with and information provided to detainees, and non-uniform practices across field offices).

26.     As *Zadvydas* makes clear, the inadequacy of the POCR process implicates serious constitutional concerns since "[f]reedom from imprisonment—from government custody, detention, or other forms of restraint—lies at the heart of the liberty that [the Due Process] Clause protects." 533 U.S. at 690.  Thus, the documents the Plaintiffs seek through this action concern matters of great public importance—namely, the government's policy of subjecting individuals to prolonged and indefinite immigration detention and its failure to comply with the constitutional, statutory, and regulatory limits on that detention.   The public has a right to examine the extent of ICE's civil detention program, and to know whether ICE is adhering to the Supreme Court's *Zadvydas* ruling, and whether ICE's administrative custody reviews are providing any meaningful process for the thousands of immigration detainees languishing in jail under punitive conditions of confinement.  Given the great public interest in these issues and what is at stake for those individuals being deprived their liberty, the need for timely disclosure of records under FOIA is particularly acute.

**Plaintiffs' FOIA Request to Immigration and Customs Enforcement**

27.     In its First FOIA Request on January 13, 2009, the ACLU requested twelve categories of records relating to prolonged and indefinite detainees in general and various aspects of the POCR process in particular.  Among the records requested were:

- Records reflecting data for individuals who were detained six months or longer ("Prolonged Detainees") as of December 31, 2008, including all 90-day and 180-day post-order custody review (POCR) decisions for such individuals from November 1, 2007 onward;

- Records reflecting information pertaining to Prolonged Detainees who were released from custody since November 14, 2001 because they won their removal cases, including all 90-day and 180-day POCR review decisions for such individuals;
- Records reflecting information pertaining to Prolonged Detainees who were released at their 90-day custody review;
- Records reflecting information pertaining to Prolonged Detainees who had been detained six months after the entry of a final order of removal that was not judicially stayed ("*Zadvydas* Detainees") from November 14, 2001 onward;
- Records reflecting information pertaining to *Zadvydas* Detainees who were released from custody from November 14, 2001 onward because their removal was not significantly likely in the reasonably foreseeable future; and
- Records related to DHS and ICE policies, procedures, and/or guidelines on POCRs as well as the detention and conditions of supervision of individuals whose removal has been judicially stayed.

28.    The First FOIA Request was simultaneously filed with ICE and DHS and included requests for both expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E), and for a fee waiver, pursuant to 5 U.S.C. §§ 552 (a)(4)(A)(ii)(II) and 552 (a)(4)(A)(iii).

29.    ICE acknowledged receipt of the First FOIA Request on January 26, 2009.

30.    By letter dated January 26, 2009 (a copy of which is attached as **Exhibit E**) ICE denied the ACLU's request for expedited processing and held its request for a fee waiver in abeyance pending the identification and quantification of responsive records.

31.    On March 20, 2009, the ACLU filed an administrative appeal with ICE (a copy of which is attached as **Exhibit F**) contesting (i) ICE's denial of its request for expedited processing, (ii) ICE's failure to grant the ACLU fee status as a "representative of the news media" under 5 U.S.C. §§ 552(a)(4)(A)(ii)(II), or to grant a fee waiver under 8 U.S.C. § 552(a)(4)(A)(iii), and (iii) ICE's decision to hold the ACLU's request for a fee waiver in abeyance.

32.    By letter dated March 31, 2009, ICE acknowledged receipt of the ACLU's appeal

request.[4]

**ICE's Final Response to Plaintiffs' First FOIA Request**

33.    On September 30, 2009, in conjunction with the September 30th Production, ICE issued its "final response" to the ACLU's First FOIA Request (a copy of which is attached as **Exhibit G**).

34.    In its "final response," ICE produced approximately 742 pages and two Excel files that ICE alleged were responsive to the First FOIA Request.

35.    Of the documents produced in its September 30th Production, ICE withheld portions of 242 pages as exempt from disclosure under FOIA Exemptions (b)(2)High, (b)(5), (b)(6), and (b)(7)(C).  Such redaction was improper, however, as ICE provided no explanation of how those FOIA exemptions applied to the documents that ICE withheld or redacted in the September 30, 2009 Production—ICE's "final response" simply stated the general parameters of the FOIA exemptions.  A government agency may not evade its obligations under FOIA through such conclusory statements.

36.    In addition, ICE's September 30th Production "located 7 pages that originated within the U.S. Department of Justice, Executive Office for Immigration Review ["EOIR"]" and transferred item 9(f) of the ACLU's request to the EOIR on the ground that the EOIR "may have records responsive" to that item.  Item 9(f) requested information on the number of petitions for writs of habeas corpus filed by *Zadvydas* Detainees who were released from custody from November 14, 2001 onward because their removal was not significantly likely in the reasonably foreseeable future, including the case name and court where those petitions were filed.  Plaintiffs

---

[4]    On May 6, 2010, ICE informed the ACLU that it was administratively closing the appeal as moot in light of its "final response" to the ACLU in September 2009.

have not yet received a response from the EOIR as to the status of the item 9(f) request.

37.     Moreover, ICE further stated in its September 30th Production that it was unable to locate *any* records responsive to items 2, 4, 5, and 7 of the First FOIA Request.  Items 2, 4, 5, and 7 sought, respectively—

- All 90-day and 180-day post-order custody review decisions since November 1, 2007 for Prolonged Detainees (item 2);

- All 90-day and 180-day post-order custody review decisions for Prolonged Detainees who were released from custody since November 14, 2001 on the ground that they won their removal cases (item 4);

- All records reflecting certain data pertaining to *Zadvydas* Detainees who were released at their 90-day custody review from November 14, 2001 onward (item 5); and

- All 90-day and 180-day post-order custody review decisions for *Zadvydas* Detainees from November 14, 2001 (item 7).

38.     Certain records that ICE produced in the September 30th Production demonstrate that ICE conducted an inadequate search for records responsive to these requests, and that ICE is, in fact, withholding responsive documents, including 90-day and 180-day POCR decisions.

39.     Specifically, although ICE asserted in connection with the September 30th Production that it could not locate any records responsive to items 2, 4, 5, and 7 of the First FOIA Request, the documents that it produced indicate that such records exist and are in the custody or control of ICE.  For example, a document titled "Varick Management 01/20/05" that was produced by ICE outlines steps for staff to take at the Varick detention facility with respect to post-final-order detainees.  The document directs that "[i]f the subject is in custody after 180 days, you will scan the completed HQCMU [Headquarters Custody Management Unit] checklist, signed by an SDDO [Supervisory Detention and Deportation Officer], with a scanned copy of the [POCR] decision letter and worksheet advising on any recent developments to the mailbox called CMU.DRP-@dhs.gov."  Therefore, according to ICE's records, documents responsive to

items 2, 4, 5, or 7, such as the POCR "decision letters," are retrievable from the mailbox CMU.DRP-@dhs.gov. ICE did not explain why it did not retrieve those documents from that mailbox.

40.     In addition, other publicly available information indicates that ICE failed to produce other responsive documents that are in its custody.   The U.S. Government Accountability Office ("GAO") indicated on its website that ICE maintains an information system known as the Enforcement Alien Removals Module ("EARM") which can successfully generate post-order custody review reports for individuals who have been in detention for 90 days, 180 days, and for longer periods.[5] According to the GAO, the EARM system also enables ICE to determine which individuals have been in detention for at least 180 days, how many post-order custody reviews were made pursuant to the *Zadvydas* decision, and the outcomes that resulted from those reviews. *Id.* Moreover, "ICE officials said they sought to make the EARM user-friendly; and convened working groups, detailed staff to test the application, and had management involvement and support to ensure that it would meet the needs of users." *Id.* Accordingly, upon information and belief, a reasonable search of the records in the custody or under the control of ICE would have located documents responsive to items 2, 4, 5, and 7 of the First FOIA Request.

41.     Further, documents from the September 30th Production contain internal inconsistencies that demonstrate the inadequacy of ICE's search.   For example, responses to items 6 and 8 of the First FOIA Request demonstrate that at least one of those responses is incorrect.  Specifically, item 6 requested the total number of detainees detained for six months or

---

[5]     GAO, *Enforcement: Better Data and Controls Are Needed to Assure Consistency with the Supreme Court Decision on Long-Term Alien Detention*, http://www.gao.gov/products/GAO-04-434 (describing, under Comments, the implementation of EARM since the GAO's 2004 report referenced in paragraph 40 (last visited June 1, 2011).

longer (following the entry of a final order of removal that was not judicially stayed) from November 14, 2001 onward.  The total number of detainees given by ICE in its response to item 6 was 2,551.  Item 8 requested the total number of detainees who were removed from the United States from November 14, 2001 onward after being detained for six months or longer (following the entry of a final order of removal that was not judicially stayed).  The total number of detainees given by ICE in its response to item 8 was 18,694.  According to the two sets of data, the number of people removed after having been detained for six months or longer was greater than the number of people who had ever been detained for six months or longer.  It is clear that the government cannot remove more detainees than they actually were holding in detention. Hence, the information provided by ICE in its "final response" is *prima facie* inaccurate.

**Plaintiffs' Unsuccessful Efforts to Obtain Clarification of ICE's "Final Response"**

42.    By letter dated November 20, 2009 (a copy of which is attached as **Exhibit H**) the Plaintiffs, in an effort to resolve the inconsistencies mentioned above, requested clarification (the "Clarification Letter") regarding certain terms ICE employed in its "final response."  Despite Plaintiffs' repeated communications with ICE's FOIA office—both by email and by phone— ICE has failed to provide a response to the Clarification Letter, even though it has repeatedly assured the ACLU that a response would be forthcoming.

43.    By letter dated November 30, 2009 (a copy of which is attached as **Exhibit I**), the Plaintiffs administratively appealed ICE's "final response."  By letter dated March 12, 2010 (a copy of which is attached as **Exhibit J**), ICE acknowledged receipt of the ACLU's administrative appeal letter.

44.    On August 31, 2010, ICE denied the ACLU's appeal of November 30, 2009 (a copy of the denial is attached as **Exhibit K**), arguing that withholding the documents was

reasonable, and that the documents withheld by ICE fell within the enumerated FOIA exemptions. In that denial, ICE again claimed that the data requested by the ACLU under items 2, 4, 5, and 7 of the First FOIA Request is not tracked in the DRO databases.

**Plaintiffs' Second FOIA Request**

45.     On September 21, 2010, the ACLU sent ICE a new FOIA Request (the "Second FOIA Request") (a copy of which is attached as **Exhibit L**), which was based upon information received from ICE via the September 30th Production, which indicated that from November 14, 2001 through early 2009, ICE detained for over six months approximately 5,928 individuals who ultimately won their removal cases. Specifically, the Second FOIA Request sought additional documents pertaining to these 5,928 individuals, including copies of any custody determinations made in their cases. The Second FOIA Request also sought expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E), and a fee waiver, pursuant to 5 U.S.C. §§ 552 (a)(4)(A)(ii)(II) and 552 (a)(4)(A)(iii).

46.     By letter dated October 1, 2010 (a copy of which is attached as **Exhibit M**) ICE denied the ACLU's request for expedited processing in connection with the Second FOIA Request and held the request for a fee waiver in abeyance pending the quantification of responsive records. By letter dated December 23, 2010 (a copy of which is attached as **Exhibit N**), the Plaintiffs administratively appealed the denial of the ACLU's request for expedited processing and the decision to hold the fee waiver in abeyance.

47.     On October 7, 2010, ICE acknowledged receipt of the Second FOIA Request (a copy of ICE's acknowledgement is attached as **Exhibit O**). Thereafter, ICE exchanged a series of e-mails with the ACLU, seeking "clarification" of various points in the Second FOIA Request. The ACLU attempted to address ICE's concerns, but, finally, by letter dated December 20, 2010

(a copy of which is attached as **Exhibit P**), the ACLU wrote ICE to dispute that the Second FOIA Request needed clarification and emphatically stated that "there are no further details or clarification we can provide" with respect to the Second FOIA Request.

48.     After more than a month of silence, ICE sent a letter to the ACLU dated January 25, 2011 (a copy of which is attached as **Exhibit Q**), in which it refused to produce the requested records on the ground that the ACLU had not provided ICE with an alien file ("A-file") number for each detainee.

49.     By letter dated February 4, 2011 (a copy of which is attached as **Exhibit R**), the ACLU responded to ICE that it could not provide A-file numbers for the detainees since ICE had never provided the ACLU with that information.  Given that such information is in ICE's possession, and it was ICE who identified the 5,928 individuals in the first place, it made no sense that ICE was requesting it from the ACLU.  Because the Second FOIA Request had already been pending for nearly five months, the Plaintiffs requested that ICE provide the ACLU with any responsive records within 20 days or the ACLU would deem its administrative remedies exhausted.

50.     By letter dated February 24, 2011 (a copy of which is attached as **Exhibit S**), ICE stated that it had administratively closed the Second FOIA Request.  In the letter, ICE did not identify any other administrative recourse and informed the ACLU that its appeal of (i) the denial of expedited processing and (ii) the decision to hold the fee waiver in abeyance was also administratively closed.

**Plaintiffs' Third FOIA Request**

51.     On September 21, 2010, the ACLU sent ICE another new FOIA Request (the "Third FOIA Request") (a copy of which is attached as **Exhibit T**), seeking up-to-date records

similar to those requested in the First FOIA Request. The Third FOIA Request also sought expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E), and a fee waiver, pursuant to 5 U.S.C. §§ 552 (a)(4)(A)(ii)(II) and 552 (a)(4)(A)(iii).

52.      By letter dated October 4, 2010 (a copy of which is attached as **Exhibit U**), ICE denied the ACLU's request for expedited processing in connection with the Third FOIA Request and held the request for a fee waiver in abeyance pending the quantification of responsive records. By letter dated December 23, 2010 (a copy of which is attached as **Exhibit V**), the Plaintiffs administratively appealed the denial of the request for expedited processing and the decision to hold the fee waiver in abeyance.

53.      On March 4, 2011, in conjunction with the March 4th Production, ICE issued its "final response" to the ACLU's Third FOIA Request (a copy of which is attached as **Exhibit W**).

54.      It is unclear whether most of the documents provided by ICE in the March 4th Production are responsive to the Third FOIA Request; many of the documents plainly are not. ICE failed to provide a "key" or other guide to the categories and codes used by ICE for classifying information in each of the spreadsheets produced. Without definitions and explanations of the spreadsheet headings, the ACLU cannot determine whether the data is responsive to the Third FOIA Request.

55.      Moreover, the production contains inconsistent or ambiguous information. For example, a spreadsheet labeled "r_11-0003 Item 1 REDACTED" (the "Item 1 Spreadsheet") which described detainees who were in ICE custody for longer than six months, contains separate categories for "Initial Book In Date" and "Book In Date." Because those dates diverge, the ACLU cannot determine with certainty whether the spreadsheet accurately reflects the

population of prolonged detainees.

56.    The Item 1 Spreadsheet contains other internal inconsistencies.  In a worksheet labeled "Details Length of Detention," Columns AL ("Mandate_Y/N") and AM ("Mandatory_Det") indicate that detention is mandatory for specific individuals.  However, other data shows that certain of those individuals are marked as not being in mandatory detention in Column AV ("Mandatory and Non Mandatory"), contradicting the labeling in Columns AL and AM.

57.    Further, a worksheet within the Item 1 Spreadsheet labeled "Details_FO Judicially Stayed" ostensibly lists individuals whose removal is subject to a judicial stay.  However, there are columns within this worksheet that cast doubt on whether it actually contains information on detainees with judicial stays.  Specifically, there are detainees who have a "Yes" in the "Final Order Executable" column (Column W) as well as detainees with a date listed in the "Final Order Executed Date" column (Column Z).  The data contained in these columns suggests that this worksheet—purportedly listing detainees with judicial stays of removal in place—is inaccurate because it is impossible for a person to have both a final order that can be effectuated at any time (as the titles of the columns suggest) and a judicial stay against his removal in place.

58.    Also, in the Item 1 Spreadsheet, the "Details Length of Detention" worksheet contains individuals who are listed as having no final order in the "Final Order Yes No" column (Column M), and who also have final order dates listed in the "Modified Final Order Date" column (Column AY).  These two columns contradict each other on their faces.

59.    The Item 1 Spreadsheet also contained columns labeled "Book Out" and "Final Order Executed Date" in the "Details--Length of Detention" worksheet.  If either of these columns refers to the date that detainees were released from custody—as the titles of the

columns suggest—then the spreadsheet does not reflect who is currently detained by ICE, as asked for in the Request.

60.    The ICE spreadsheet it labeled "r_11-0003 Item 6 REDACTED," which is supposed to contain information on immigration detainees held in custody for six months or longer following the entry of a final order of removal that was not judicially stayed, is inaccurate and unresponsive.  Specifically, it appears to list all detainees who have final order dates that are at least six months old, not detainees who were detained for six months after the issuance of a final order that was not judicially stayed, as sought by the Request.  As a result, it is unclear whether the summaries of the data ICE produced in that spreadsheet are accurate or reliable.

61.    Similarly, the spreadsheet ICE produced labeled "r_11-0003 Item 8 REDACTED" (the "Item 8 Spreadsheet") contains the same error:  it appears to contain all detainees who have final order dates that are at least six months old, not detainees who were detained for six months after the issuance of a final order that was not judicially stayed, as sought by the Third FOIA Request.  Thus, the summaries of the data ICE produced in the Item 8 Spreadsheet may also be inaccurate or unreliable.

62.    Moreover, in the Item 8 Spreadsheet, some individuals have a "Release Reason" in Column R listed as something other than "Deported/Removed," such as "Bonded Out," which is not responsive to the request in Item 8 for information on Zadvydas Detainees who were released for the purpose of immediate removal.

63.    ICE's response to Item 9 was particularly inadequate and unresponsive.  The spreadsheet labeled "r_11-0003 Item 9 REDACTED" (the "Item 9 Spreadsheet") contains some entries for individuals whose removal is characterized as "not [s]ignificantly likely in [the] foreseeable future" as requested in Item 9  However, the vast majority of individuals listed in the

spreadsheet are not described as having no significant likelihood of removal in the reasonably foreseeable future and, accordingly, do not fit within the parameters of the information requested in Item 9 (i.e., records on detainees who were released from custody because their removal was not significantly likely in the reasonably foreseeable future).

64.     Specifically, the worksheet labeled "Non-Detained Details" in the Item 9 Spreadsheet contains, in Column AS, a "Final Order Executable Reason" for each individual.  A couple hundred detainees are listed as not having executable final orders of removal on the ground that their "Removal [Is] Unlikely in [the] Foreseeable Future."  But the vast majority of detainees—over 60,000—are not so listed; rather, they are described as not having enforceable orders of removal because, *inter alia*, they are "Not in ICE Custody," "Unable to Obtain Travel Documents," "Other (provide reason below in text box)," or "Deferred Action – CAT, DED, TPS, Withholding."   The spreadsheet never explains on what basis these individuals are considered to have removals that are not significantly likely in the reasonably foreseeable future or are otherwise responsive to Item 9.

65.     The "Summary" worksheet, the Item 9 Spreadsheet provides a figure of 782 individuals from the years of 2002 to 2011 who have a "Release Reason" of being "Deported/Removed."  This information further demonstrates that the Item 9 Spreadsheet is unresponsive to the Third FOIA Request because it does not identify individuals who were released because their removal is not significantly likely in the reasonably foreseeable future, as requested in Item 9. That is, an individual released because he or she was removed cannot fit into the category of individuals who were released because their removal is not significantly likely in the reasonably foreseeable future.

66.     The ICE spreadsheet labeled "r_11-0003 Item 10 REDACTED" (the "Item 10

Spreadsheet") is also inadequate and unresponsive.  Item 10 requested information as to individuals with final orders of removal that were not judicially stayed who were released from ICE custody for any reason other than whether their removal was reasonably foreseeable. In the worksheet "By Release Reason" in the Item 10 Spreadsheet, there are "Release Reasons" listed such as "Bonded Out," "Order of Recognizance," "Order of Supervision," or "Paroled." However, these are not reasons why a detainee would be released as requested in Item 10, but methods by which the detainees were released.  Thus, the Item 10 Spreadsheet is unresponsive to the Third FOIA Request.

67.   ICE's response is incomplete and does not reflect an adequate search as FOIA requires.  For example, with respect to Items 11 and 12 of the Third FOIA Request, the ACLU made identical queries to those in the First FOIA Request.  Although its response was inadequate there as well, ICE produced hundreds of pages of relevant documents in response to the First FOIA Request—documents that are entirely missing from the March 4th Production.  Further, ICE failed to produce *any* documents dated between January 2009, when the First FOIA Request was filed, and September 2010, when the Third FOIA Request was submitted, demonstrating that the search failed to account for recent developments with regard to the subject matter of Items 11 and 12.

68.   Moreover, ICE failed to produce any documents responsive to portions of the Third FOIA Request (i.e., Items 9 and 10) seeking information about detainees who had filed habeas petitions and those who were released after filing habeas petitions.  This indicates that ICE did not conduct a thorough search and thus it has not satisfied the "reasonable effort" requirement of 5 U.S.C. § 552(a)(3)(B)-(C).

69.   Further, ICE provided incomplete responses to many other queries in the Request,

including, but not limited, to:

a.   The Item 1 Spreadsheet did not include any information on the number of prolonged detainees with cases pending before circuit courts and the number of prolonged detainees whose cases are on remand before an immigration judge or the Board of Immigration Appeals, as requested in Item 1(h) and 1(i).

b.   The spreadsheet labeled "r_11-0003 Item 5 RELEASE IN FULL" (the "Item 3 Spreadsheet") did not include information on individuals with stays of removal in place who were released at their 90-day review from November 2001 to 2008, as requested in Item 5(d).

c.   The Item 5 Spreadsheet failed to provide the nationality of the individuals released at the 90-day custody review as requested in Item 5(c).

d.   In the Item 9 Spreadsheet, ICE failed to provide information on the conditions of supervised released and the removals of individual with final orders of removal that were not judicially stayed who were released from custody because their removal was not significantly likely in the reasonably foreseeable future, as requested by Item 9(j)-(l).

e.   In the "Item 10 Spreadsheet," ICE failed to provide information on the conditions of supervised released and the removals of individual with final orders of removal that were not judicially stayed who were released from custody for reasons other than whether their removal was reasonably foreseeable, as requested in Item 10(j)-(l).

70.   Finally, ICE arbitrarily used FOIA exemptions as a basis for redacting certain documents in the March 4th Production.  ICE did not provide reasons for the heavily redacted responses to Items 11 and 12, beyond the conclusory labeling of documents by exemption number or the title of the exemption.

71.   ICE improperly used FOIA Exemptions 2(high), 5, 6 and 7(C) to withhold information from public view.  ICE is using Exemption 2(high) to withhold agency codes, ENFORCE integrated identification numbers, and employee training materials.  It is using Exemption 5 to withhold memoranda, training materials, worksheets and guidance documents. And it is using Exemptions 6 and 7(C) to withhold third party names, A-numbers, dates of birth, detention stay identification numbers, ENFORCE integrated identification numbers and detention identification numbers.  For each of the exemptions claimed by ICE, ICE has failed to

provide a reasonably detailed explanation as to why the claimed exemptions apply to the withheld or redacted documents.

72.     On March 31, 2011, the ACLU filed an administrative appeal of ICE's response to the Third FOIA Request (a copy of which is attached as **Exhibit X**).  By letter dated April 5, 2011 (a copy of which is attached as **Exhibit Y**), ICE acknowledged receipt of the ACLU's administrative appeal letter.

73.     By letter dated April 14, 2011 (a copy of which is attached as **Exhibit Z**), ICE responded to the ACLU's appeal and remanded the ACLU's Third FOIA Request to the ICE FOIA Office for reprocessing in light of the U.S. Supreme Court's recent decision in *Glen Scott Milner v. Department of the Navy*, 131 S. Ct. 1259 (2011).

74.     By letter dated April 21, 2011 (a copy of which is attached as **Exhibit AA**), ICE denied the ACLU's fee waiver request that previously had been held "in abeyance pending quantification of records" and demanded $2,042.00 in fees for the searches conducted thus far. In concluding that the ACLU did not meet the standard for a fee waiver, ICE principally asserted that there is a "restricted" public interest in the information requested, that the ACLU does not qualify for "news media status," and that the ACLU has a "commercial interest" in the information requested.

75.     The ACLU appealed ICE's denial of its fee waiver request by letter dated May 5, 2011 (a copy of which is attached as **Exhibit BB**).  ICE acknowledged receipt of that appeal on May 9, 2011 (a copy of that acknowledgement is attached as **Exhibit CC**).  [ICE has not timely responded to that appeal.]

76.     By letter dated April 26, 2011 (a copy of which is attached as **Exhibit DD**), following the April 14th remand, ICE issued a "second and final" response (the "Second and

Final Response") to the ACLU's Third FOIA request.  In its response, ICE produced documents allegedly responsive to Items 3, 6, 9, and 10; stated that ICE's ERO Statistical Tracking Unit does not track information related to Item 13; and referred the request for POCR decisions in Items 2, 4, and 7 to U.S. Citizenship and Immigration Services ("USCIS").  ICE stated that it was withholding certain information pursuant to FOIA exemptions 6, 7(C), and 7(E).

77.     ICE's Second and Final Response and the accompanying production are inadequate at best, and obstructionist and misleading at worst.  With regard to Item 3, ICE failed to respond to Plaintiffs' request for the second time. That is, in the March 4th Production, ICE sought clarification with respect to Item 3. Then in its Second and Final Response, rather than provide information in response to the clarified request, ICE produced a wholly unresponsive spreadsheet containing information related to detainees for whom removal was effected, not those who were released because they ultimately prevailed in their removal proceedings as requested by Item 3. The spreadsheets produced in response to Items 6, 9, and 10 appear to be identical to spreadsheets previously produced in the March 4th Production.  These spreadsheets suffer from the same defects as their prior iterations.  [See ¶¶ 55-69, supra].  Accordingly, ICE failed to respond to any inadequacies, inconsistencies, or ambiguities detained in the ACLU's administrative appeal of the March 4th Production.

78.     Furthermore, ICE again applied the claimed FOIA exemptions in its Second and Final Response in a conclusory manner which ultimately demonstrates how arbitrarily ICE has applied the FOIA exemptions in general in response to the ACLU's FOIA requests.  For example, in the March 4th Production, ICE claimed FOIA exemption 2(high) to withhold "internal agency codes."  In the Second and Final Response of April 26, 2011, ICE claimed exemption 7(E), not 2(high), to withhold "internal agency codes" and also announced it was

withholding "initial charge codes" and "event numbers" pursuant to exemption 7(E) as well, despite the lack of any mention of "initial charge codes" and "event numbers" or exemption 7(E) in the March 4th Production.

79.    Additionally, ICE's referral of the Items 2, 4, and 7 to USCIS is improper because, although USCIS maintains the A-files for each detainee, ICE is the agency most likely to have the information necessary to identify individuals as to whom the ACLU has requested POCR decisions.  Without USCIS having such identifying information, which ICE has not indicated it will provide to USCIS, it is hard to conceive how USCIS could identify the relevant A-Files, search them for copies of the POCR decisions allegedly contained therein, and thereby respond to items 2, 4, and 7 on ICE's behalf.

80.    The ACLU filed an appeal of ICE's "second and final" response on May 5, 2011 (a copy of which is attached as **Exhibit EE**).  By letter dated May 9, 2011 (a copy of which is attached as **Exhibit FF**), ICE acknowledged receipt of that appeal.  ICE has not timely responded to that appeal.

## FIRST CLAIM FOR RELIEF
*(For a Declaration that Plaintiffs are Entitled to Disclosure of the Records Requested in the First FOIA Request)*

81.    Plaintiffs  repeat  and  re-allege  each  and  every  allegation  contained  in  the foregoing paragraphs 1-80 as if fully set forth herein.

82.    ICE's failure to respond to the First FOIA Request in a timely fashion violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and Defendants' corresponding regulations.

83.    ICE's failure to respond to the ACLU's administrative appeal in a timely fashion violates FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), and Defendants' corresponding regulations.

84.    ICE's failure to make promptly available the records sought by the First FOIA

Request violates FOIA, 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(A)(ii), and Defendants' corresponding regulations.

85.    ICE's failure to disclose in part or in whole documents exempted pursuant to FOIA, 5 U.S.C. § 552(b)(2)High, (b)(5), (b)(6), and (b)(7)(C) is unlawful and violates FOIA, 5 U.S.C. § 552, and ICE's corresponding regulations.

86.    ICE's failure to make a reasonable effort to search for records the ACLU seeks violates FOIA, 5 U.S.C. § 552(a)(3)(C) and ICE's corresponding regulations.

87.    Plaintiffs have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## SECOND CLAIM FOR RELIEF
*(For an Injunction Compelling Immediate Production of the Records Requested in the First FOIA Request*

88.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs 1-87 as if fully set forth herein.

89.    As a result of the foregoing, Plaintiffs are entitled to an injunction compelling the Defendants to immediately produce the records requested in the First FOIA Request.

## THIRD CLAIM FOR RELIEF
*(For a Violation of FOIA for Failure to Expedite the Processing of the First FOIA Request Against All Defendants)*

90.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs 1-89 as if fully set forth herein.

91.    The failure of ICE to grant Plaintiffs' request for expedited processing of the First FOIA Request violates FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and Defendants' corresponding regulations.

92.    Plaintiffs have exhausted their administrative remedies under 5 U.S.C.

§ 552(a)(6)(E)(iii).

## FOURTH CLAIM FOR RELIEF
*(For a Violation of FOIA for Failure to Allow Fee Waiver in Connection
with the First FOIA Request)*

93.     Plaintiffs repeat and re-allege each and every allegation contained in the
foregoing paragraphs 1-92 as if fully set forth herein.

94.     The failure of ICE to grant Plaintiffs' request for a waiver of search, review, and
duplication fees in connection with the First FOIA Request violates FOIA, 5 U.S.C.
§ 552(a)(4)(A)(iii), and Defendants' corresponding regulations.

95.     The failure of ICE to grant Plaintiffs' request for a limitation of fees in connection
with the First FOIA Request violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendants'
corresponding regulations.

96.     Plaintiffs have exhausted their administrative remedies under 5 U.S.C.
§ 552(a)(4)(A)(vii).

## FIFTH CLAIM FOR RELIEF
*(For a Declaration that Plaintiffs are Entitled to Disclosure of the Records Requested
in the Second FOIA Request)*

97.     Plaintiffs repeat and re-allege each and every allegation contained in the
foregoing paragraphs 1-96 as if fully set forth herein.

98.     ICE's failure to respond to the Second FOIA Request in a timely fashion violates
FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and Defendants' corresponding regulations.

99.     ICE's failure to make promptly available the records sought by the Second FOIA
Request violates FOIA, 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(A)(ii), and
Defendants' corresponding regulations.

100.    ICE's failure to disclose in part or in whole documents exempted pursuant to

FOIA, 5 U.S.C. § 552(b)(2)High, (b)(5), (b)(6), and (b)(7)(C) is unlawful and violates FOIA, 5 U.S.C. § 552, and ICE's corresponding regulations.

101.    ICE's failure to make a reasonable effort to search for records the ACLU seeks violates FOIA, 5 U.S.C. § 552(a)(3)(C) and ICE's corresponding regulations.

102.    Plaintiffs have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### SIXTH CLAIM FOR RELIEF
*(For an Injunction Compelling Immediate Production of the Records Requested in the Second FOIA Request*

103.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs 1-102 as if fully set forth herein.

104.    As a result of the foregoing, Plaintiffs are entitled to an injunction compelling the Defendants to immediately produce the records requested in the Second FOIA Request.

### SEVENTH CLAIM FOR RELIEF
*(For a Violation of FOIA for Failure to Expedite the Processing of the Second FOIA Request Against All Defendants)*

105.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs 1-104 as if fully set forth herein.

106.    The failure of ICE to grant Plaintiffs' request for expedited processing of the Second FOIA Request violates FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and Defendants' corresponding regulations.

107.    Plaintiffs have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(E)(iii).

### EIGHTH CLAIM FOR RELIEF
*(For a Violation of FOIA for Failure to Allow Fee Waiver in Connection*

*with the Second FOIA Request)*

108.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs 1-107 as if fully set forth herein.

109.   The failure of ICE to grant Plaintiffs' request for a waiver of search, review, and duplication fees in connection with the Second FOIA Request violates FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendants' corresponding regulations.

110.   The failure of ICE to grant Plaintiffs' request for a limitation of fees in connection with the Second FOIA Request violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendants' corresponding regulations.

111.   Plaintiffs have exhausted their administrative remedies under 5 U.S.C. § 552(a)(4)(A)(vii).

## NINTH CLAIM FOR RELIEF
*(For a Declaration that Plaintiffs are Entitled to Disclosure of the Records Requested
in the Third FOIA Request)*

112.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs 1-111 as if fully set forth herein.

113.   ICE's failure to respond to the Third FOIA Request in a timely fashion violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and Defendants' corresponding regulations.

114.   ICE's failure to respond to the ACLU's administrative appeal in a timely fashion violates FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), and Defendants' corresponding regulations.

115.   ICE's failure to make promptly available the records sought by the Third FOIA Request violates FOIA, 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(A)(ii), and Defendants' corresponding regulations.

116.   ICE's failure to disclose in part or in whole documents exempted pursuant to

FOIA, 5 U.S.C. § 552(b)(2)High, (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) is unlawful and violates

FOIA, 5 U.S.C. § 552, and ICE's corresponding regulations.

117.    ICE's failure to make a reasonable effort to search for records the ACLU seeks

violates FOIA, 5 U.S.C. § 552(a)(3)(C) and ICE's corresponding regulations.

118.    Plaintiffs have exhausted their administrative remedies under 5 U.S.C.

§ 552(a)(6)(C)(i).

### TENTH CLAIM FOR RELIEF
*(For an Injunction Compelling Immediate Production of the Records Requested in the Third FOIA Request*

119.    Plaintiffs repeat and re-allege each and every allegation contained in the

foregoing paragraphs 1-118 as if fully set forth herein.

120.    As a result of the foregoing, Plaintiffs are entitled to an injunction compelling the

Defendants to immediately produce the records requested in the Third FOIA Request.

### ELEVENTH CLAIM FOR RELIEF
*(For a Violation of FOIA for Failure to Expedite the Processing of the Third FOIA Request Against All Defendants)*

121.    Plaintiffs repeat and re-allege each and every allegation contained in the

foregoing paragraphs 1-120 as if fully set forth herein.

122.    The failure of ICE to grant Plaintiffs' request for expedited processing of the

Third FOIA Request violates FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and Defendants' corresponding

regulations.

123.    Plaintiffs have exhausted their administrative remedies under 5 U.S.C.

§ 552(a)(6)(E)(iii).

### TWELFTH CLAIM FOR RELIEF
*(For a Violation of FOIA for Failure to Allow Fee Waiver in Connection with the Third FOIA Request)*

124.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs 1-123 as if fully set forth herein.

125.    The failure of ICE to grant Plaintiffs' request for a waiver of search, review, and duplication fees in connection with the Third FOIA Request violates FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendants' corresponding regulations.

126.    The failure of ICE to grant Plaintiffs' request for a limitation of fees in connection with the Third FOIA Request violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendants' corresponding regulations.

127.    The failure of ICE to grant Plaintiffs' request for a limitation of fees in connection with the Third FOIA Request violates FOIA, 5 U.S.C. § 552(a)(4)(A)(viii), and Defendants' corresponding regulations.

128.    Plaintiffs have exhausted their administrative remedies under 5 U.S.C. § 552(a)(4)(A)(vii).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

1)    Ordering Defendants immediately to provide all records responsive to the First FOIA Request;

2)    Ordering Defendants immediately to provide all records responsive to the Second FOIA Request;

3)    Ordering Defendants immediately to provide all records responsive to the Third FOIA Request;

4)    Enjoining Defendants from withholding the requested records;

5)    Ordering Defendants to expedite processing of Plaintiffs' requests pursuant to FOIA, 5 U.S.C. § 552(a)(6)(E)(iii);

6)      Ordering Defendants to grant Plaintiffs' requests for a waiver of fees, or
        limitation of fees, pursuant to FOIA, 5 U.S.C. §§ 552(a)(4)(A)(ii)(II);
        552(a)(4)(A)(iii); or 552(a)(4)(A)(viii).

7)      Awarding Plaintiffs costs and reasonable attorneys' fees in this action as provided
        by 5 U.S.C. § 552(a)(4)(E); and

8)      Granting Plaintiffs such other and further relief this Court may deem just and
        proper.

Dated:  June 3, 2011

                        Respectfully submitted,


                        **FRIED, FRANK, HARRIS,**
                        **    SHRIVER & JACOBSON LLP**

                        RICHARD G. LELAND
                        JENNIFER L. COLYER
                        One New York Plaza
                        New York, NY 10004
                        Telephone: (212) 859-8000
                        Facsimile: (212) 859-4000

                        **AMERICAN CIVIL LIBERTIES UNION**
                        **    FOUNDATION**
                        JUDY RABINOVITZ
                        TANAZ MOGHADAM
                        125 Broad Street
                        18th Floor
                        New York, NY 10004
                        Telephone: (212) 549-2660
                        Facsimile: (212) 549-2654

                        **NEW YORK CIVIL LIBERTIES FOUNDATION**
                        UDI OFER
                        125 Broad Street, 19th Floor
                        New York, NY 10004-2400
                        Telephone:  (212) 607-3300
                        Facsimile: (212) 607-3318


                        *Attorneys for Plaintiffs*

33

7946497