**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x

AMERICAN CIVIL LIBERTIES UNION; and

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                Plaintiffs,

                v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; and

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

                Defendants.

----------------------------------------------------------x

No. 11 Civ. 3786 (RMB)

ECF CASE

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York, 10007
Telephone:  (212) 637-2689
Facsimile:   (212) 637-2686

Of Counsel:

LOUIS A. PELLEGRINO
Assistant United States Attorney

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS...........................................................................3

    Detained Individuals ..........................................................................3

    Plaintiffs' FOIA Request and ICE's Search and Response ....................................3

ARGUMENT ....................................................................................6

I.      LEGAL STANDARD.......................................................................6

II.    THE GOVERNMENT PROPERLY REDACTED THE NAME, ALIEN
       NUMBER, AND OTHER PERSONALLY INDENTIFIABLE INFORMATION
       OF THE INDIVIDUAL IN THE POCR SAMPLE PURSUANT TO FOIA
       EXEMPTIONS (6) AND (7)(C) ...........................................................7

       A.    The Government Properly Applied Both Exemptions 6 and 7(C) to the
             POCR Sample ............................................................9

       B.    The Redacted Information Contained in the POCR Sample Implicates
             A Clear Privacy Interest in Avoiding Public Disclosure of PII ................11

       C.    The Detainee's Privacy Interests Outweigh Any Public Interest in the
             Disclosure of His Personally Identifiable Information ............................17

III.   PURSUANT TO THE STIPULATION, THE GOVERNMENT
       RESERVES THE RIGHT TO APPROPRIATELY REDACT
       FOR PRIVILEGE ........................................................................19

IV.   THE GOVERNMENT PROPERLY REDACTED LAW ENFORCEMENT
       PROCEDURES PURSUANT TO FOIA EXEMPTION 7(E) .............................22

CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

*Ahmed v. U.S. Citizenship and Immigration Services,* No. 11–cv–6230 (CBA), 2013 WL
    27697 (E.D.N.Y. Jan. 2, 2013) ........................................................................23

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.,*
    626 F.3d 678 (2d Cir. 2010)..............................................................22, 23, 24

*American Federal of Gov. Employees, Local 1760 v. FLRA,*
    786 F.2d 554 (2d Cir. 1986)............................................................................8, 9

*Amnesty International USA v. CIA,*
    728 F. Supp. 2d 479 (S.D.N.Y. 2010)..............................................................9

*Asian Law Caucus v. U.S. Dept. of Homeland Sec.,* No. C 08-00842 CW, 2008 WL
    5047839 (N.D. Cal. Nov. 24, 2008) ...............................................................25

*Associated Press v. U.S. Department of Defense,*
    554 F.3d 274 (2d Cir. 2009)................................................................7, 9, 18, 19

*Associated Press v. U.S. Department of Justice,*
    549 F.3d 62 (2d Cir. 2008)...............................................................................6

*Barnard v. Dep't of Homeland Sec.,*
    598 F. Supp. 2d 1 (D.D.C. 2009 ....................................................................22

*Catledge v. Mueller,*
    323 F. App'x 464 (7th Cir. 2009) ...................................................................25

*CIA v. Sims,*
    471 U.S. 159 (1985)........................................................................................7

*Carney v. U.S. Dep't of Justice,*
    19 F.3d 807 (2d Cir. 1994)..............................................................................7, 16

*Coleman v. FBI,*
    13 F. Supp. 2d 75 (D.D.C. 1998) ...................................................................23

*Davis v. Dep't of Justice,*
    968 F.2d 1276 (D.C. Cir. 1992).......................................................................13

*Federal Labor Relations Auth. v. United States Department of Treasury, Finance Mgt.,*
    884 F.2d 1446 (D.C. Cir. 1989)......................................................................9

*Federal Labor Relations Auth. v. U.S. Department of Veterans Affairs,*
    958 F.2d 503 (2d Cir.1992).................................................................. *passim*

*Ferguson v. FBI,*
    89 Civ. 5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995),
    *aff'd*, 83 F.3d 41 (2d Cir. 1996) ................................................................6

*Grand Cent. P'ship, Inc. v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999) ...............................................................21, 22

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989) .............................................................................6, 7

*Judicial Watch, Inc. v. U.S. Dep't of Commerce,*
    337 F. Supp. 2d 146 (D.D.C. 2004) ..........................................................22

*Lesar v. Department of Justice,*
    636 F.2d 472 (D.C. Cir. 1980) ................................................................18

*Mayer Brown LLP v. IRS,*
    562 F.3d 1190 (D.C. Cir. 2009) ...............................................................24

*McCutcheon v. HHS,*
    30 F.3d 183 (D.C. Cir. 1994) ..................................................................10

*Miscavige v. IRS,*
    2 F.3d 366 (11th Cir. 1993) .......................................................................7

*National Record Archives & Records Admin. v. Favish,*
    541 U.S. 157 (2004) ...............................................................................17

*Nation Magazine v. U.S. Customs Serv.,*
    71 F.3d 885 (D.C. Cir. 1995) ..................................................................10

*New York Times Co. v. NASA,*
    920 F.2d 1002 (D.C. Cir. 1990) ...............................................................10

*New York Times Co. v. U.S. Dep't of Justice,*
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) .........................................................6

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132, 95 S. Ct. 1504 (1975) .........................................................20

*Perlman v. U.S. Department of Justice,*
    *312 F.3d 100 (2d Cir. 2002)* ...................................................................11

*Soghoian v. U.S. Dep't of Justice,*
    885 F. Supp. 2d 62, 2012 WL 3090309 (D.D.C. July 31, 2012) .....................24

*Spirko v. U.S. Postal Service,*
    147 F.3d 70 (D.C. Cir. 1998) ........................................................................13, 14, 15

*Tax Analysts v. IRS,*
    117 F.3d 607 (D.C. Cir. 1997) ...............................................................................20

*Tigue v. U.S. Dep't of Justice,*
    312 F.3d 70 (2d Cir. 2002)........................................................................................20

*Tran v. Dep't of Justice,*
    No. 01-0238, 2001 WL 1692570 (D.D.C. Nov. 20, 2001) ...............................23

*U.S. Department of Defense v. FLRA,*
    510 U.S. 487 (1994).................................................................................................12

*U.S. Department of State v. Washington Post Co.,*
    456 U.S. 595 (1982).................................................................................................10

*U.S. Department of the Air Force v. Rose,*
    425 U.S. 352 (1976)......................................................................................... *passim*

*U.S. Department of the Interior v. Klamath Water Users Protective Association,*
    532 U.S. 1 (2001)........................................................................................................7

*United States Department of Justice v. Reporters Committee for Freedom of the Press,*
    489 U.S, 749, 109 S. Ct. 1468, 103 L. Ed 2d 774 (1989)......................... *passim*

*United States of Department of State v. Ray,*
    502 U.S. 164 (1991).................................................................................................17

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973), *cert. denied* 415 U.S. 977 (1974) ......................6

*Weisberg v. U.S. Department of Justice,*
    745 F.2d 1476 (D.C. Cir. 1984)..............................................................14, 18, 19, 20

*Wood v. FBI,*
    432 F.3d 78 (2d Cir. 2005)........................................................................................19

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)) ..........................................................................................1, 3, 4

**STATUTES AND REGULATIONS**

8 C.F.R. §241.4, 241.13 & 241.14 ........................................................................1, 23

8 U.S.C. § 1231 ..............................................................................................1, 3

5 U.S.C. § 552(a) ..................................................................................................8

5 U.S.C. § 552(b) ..................................................................................................6

5 U.S.C. § 552(b)(5) ..................................................................................... *passim*

5 U.S.C. § 552(b)(6) ..................................................................................... *passim*

5 U.S.C. § 552(b)(7)(C) ............................................................................... *passim*

5 U.S.C. § 552(b)(7)(E) ............................................................................... *passim*

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................................7

**MISCELLANEOUS**

*DHS Privacy Incident Handling Guidance,* ¶ 1.4.9 ............................................... *passim*

## PRELIMINARY STATEMENT

In 2001, the Supreme Court held that individuals who have been found to be unlawfully present in the United States and who are scheduled for removal may not be detained for a period of more than six months where there is no significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Generally, the Government has until ninety days after initial removal proceedings are concluded to arrange for the deportation of an alien. *See* 8 U.S.C. § 1231. Thereafter, aliens detained beyond the ninety day "removal period," are subject to a Post-Order Custody Review ("POCR") process, which, pursuant to *Zadvydas,* presumes that individuals should not generally be detained longer than six months.[1]

In the sole remaining claim in this action, Plaintiffs American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively, "ACLU" or "Plaintiffs") requested, pursuant to the Freedom of Information Act ("FOIA"), that the United States Department of Homeland Security ("DHS" or the "Government") produce the collection of documents that DHS maintains for aliens detained beyond the ninety day removal period, known as POCR "files." As specified by 8 C.F.R. § 241.4, 241.13 & 241.14, POCR files contain DHS's documentation of its determinations regarding the review process for continued custody of an alien. Each POCR "file" represents a singular case file for a specific detained foreign national, and therefore contains unique information associated with that individual.

---

[1] There are exceptions to the six-month detention period, some of which are discussed in Plaintiff's Motion for Summary Judgment ("Pls. Mot.") at 3, 18.

Plaintiffs filed this lawsuit two years ago.  Three-fourths of the case was resolved via the Stipulation and Order of Settlement and Partial Dismissal (the "Stipulation"), entered by the Court on September 6, 2012 (Dkt. Item No. 21).  Since that time, in compliance with the Stipulation, the U.S. Immigration and Customs Enforcement Agency ("ICE"), a component of DHS, produced 1,101,967 individual lines of anonymous data in response to Plaintiffs' requests for information concerning *Zadvydas*-related issues.

The only remaining claim is Plaintiffs' request for the hardcopy or electronic POCR files that ICE created to adjudicate the detention status of specific individual aliens.  The parties disagree on the extent to which these POCR files should be redacted. Plaintiffs maintain that, with some exceptions, the files do not generally contain FOIA-exempt information, and should be produced with minimal redactions.  The Government believes that without written individual privacy waivers signed by each alien who is the subject of a requested POCR file, the Government must redact all information that would be an invasion of the personal privacy of the detainees whose information is contained within the POCR files (*see* FOIA Exemptions 6 and 7(C)).  The Government also seeks to redact the contents of its POCR files for potential privileges (*see* FOIA Exemption 5), and for information that is law enforcement protected (*see* FOIA Exemption 7(E)).

Pursuant to prior agreement in the Stipulation, the parties have provided the Court with one representative sample POCR file to enable the Court to resolve these conflicting claims.  This, in turn, will allow the parties to decide whether the Government will undertake a larger production of its POCR files, and how many total POCR files should be produced.

Because DHS's proposed withholdings are proper pursuant to the FOIA, the Court should deny Plaintiffs' motion for summary judgment and grant the Government's cross-motion for summary judgment.

## STATEMENT OF FACTS

### Detained Individuals

When an individual found to be in the United States illegally is ordered removed, DHS, and specifically ICE, generally places that individual in administrative detention until removal is effected. *See* 8 U.S.C. § 1231; Second Declaration of Ryan Law ("Second Law Decl.") ¶ 5. During the detention period, an ICE officer works to procure travel documents from the individual's home country. *See id.* ¶ 6. Without the necessary travel documents, the individual cannot be removed. *See id.*

Occasionally, ICE is unable to obtain such documents. *See id.* ¶ 7. This occurs for a variety of reasons, including, for example, the state of U.S. diplomatic relations with the individual's home country or an individual's medical condition. *See id.* Per the Supreme Court's decision in *Zadvydas*, in the event that ICE cannot obtain the necessary documents to allow an individual to be removed within six months of detention, and where there is no significant likelihood of removal in the reasonably foreseeable future, ICE can no longer detain the individual.[2] *See id.* ¶ 8; 533 U.S. at 701.

### Plaintiffs' FOIA Request and ICE's Search and Response

Plaintiffs filed their FOIA complaint on June 3, 2011. Amended Law Decl. ¶ 6 (Ex. 3 to Leland Decl.). The parties entered into settlement negotiations. *Id.* ¶ 7. On

---

[2]  During Fiscal Year 2012, ICE released a total of 3,216 such individuals pursuant to *Zadvydas* (and removed 409,849 aliens during that same time period). *See* Second Law Decl. ¶ 9.

September 6, 2012, the Court entered the Stipulation, which superseded the Complaint by negotiating four "New Requests." *Id.* Three of the four requests were resolved by a data production (the "Data Production") that ICE delivered to Plaintiffs on November 13, 2012. *See* Second Law Decl. ¶ 11. The Data Production totaled nearly 7.5 megabytes, which included 1,101,967 individual data points on *Zadvydas*-related issues. *Id.* ¶ 12.

As reflected in the exhibit appended to the Stipulation, and the Plaintiffs' Declaration of Michael Tan ("Tan Declaration"), the Data Production consisted of three voluminous excel spreadsheets, each of which provided on average 14 separate categories of anonymous detainee-related information from the ICE database, including information that enabled Plaintiffs to see—anonymously—how many detainees have been held beyond the six month *Zadvydas* detention period. *See* Stipulation (Leland Decl. Ex. 1); *see also* Tan Declaration ¶¶ 3, 4 (noting that spreadsheet 1 "contains tens of thousands of individual rows"). The Tan Declaration further acknowledges that each spreadsheet contains a range of information for each anonymous detainee, including the date they were booked into custody, whether or not they had a final order of removal, and how long they were held. Tan Decl. ¶¶ 6-9 (listing specific examples, *e.g.*: "a Russian man held at the Northwest Detention Center in Tacoma, Washington had been detained 2 years, 4 months, and 8 days.")

The parties agreed that the sole remaining request, known as New Request No. 2, would be resolved by cross-motions for summary judgment, *see* Stipulation ¶ 3 (Ex. 1 to Leland Decl.); Amended Law Decl. ¶ 7-8 (Ex. 3 to Leland Decl.), and that ICE would furnish a declaration to initiate that process:

> Within a reasonable time after entry of this Stipulation and
> Order, Defendants shall produce to Plaintiffs one (1)

> sample redacted Post Order Custody Review ("POCR")
> file, and an accompanying declaration and *Vaughn* index
> for the sample file (collectively the "Declaration"),
> detailing the representative types of FOIA exemptions it
> would claim over all such POCR documents called for by
> New Request No. 2 in Exhibit A.

Amended Law Decl. ¶ 8 (Ex. 3 to Leland Decl.).  The Stipulation further contemplated

that production of the single sample redacted POCR file ("POCR Sample") was intended

to allow the parties to determine, after seeking the Court's guidance, "whether any further

[POCR] production is warranted, and if so, the size and scope of the production to be

made," as governed by the Court's ruling on the exemptions at issue in this motion.

Stipulation ¶ 6 (Ex. 1 to Leland Decl.).

On January 30, 2013, the Government furnished Plaintiffs with the final version

of the declaration required by the Stipulation (*e.g.*, the Amended Law Declaration).  The

Amended Law Declaration (Leland Ex. 3) explained the basis for the Government's

proposed withholdings, and contained (a) ICE's production to Plaintiffs of a randomly

selected redacted POCR file (Leland Ex. 2), (b) an explanatory cover letter provided to

the Court on January 7, 2013, for purposes of the parties' proposed summary judgment

motions (Leland Ex. 5), and (c) an accompanying *Vaughn* Index for the POCR Sample.

The Government agrees with Plaintiffs that this dispute is now limited to thirty-

four remaining data points as numbered in the POCR Sample.  Leland Decl., Ex. 5.  The

claimed FOIA exemptions are:

- The "privacy exemptions" under 5 U.S.C. § 552(b)(6) ("Exemption 6")
  and 552(b)(7)(C) ("Exemption 7(C)");

- The deliberative process and attorney client privilege under 5 U.S.C. §
  552(b)(5) ("Exemption 5");

- The law enforcement privilege under 5 U.S.C. § 552(b)(7)(E)

5

("Exemption 7(E)").

# ARGUMENT[3]

## I.     LEGAL STANDARD

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)).  The statute requires each federal agency to make available to the public an array of information, and sets forth procedures by which requesters may obtain such information.  *See* 5 U.S.C. § 552(a).  At the same time, FOIA exempts nine categories of information from disclosure, while providing that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  FOIA "calls for broad disclosure of [g]overnment records, while maintaining a balance between the public's right to know and the government's legitimate interest in keeping certain information confidential."  *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 64 (2d Cir. 2008) (citations and quotation marks omitted).

Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *CIA v. Sims*, 471

---

[3]  The Government has not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment" and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *see also New York Times v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012).

U.S. 159, 166-67 (1985), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) (citations omitted); *see also John Doe Agency*, 493 U.S. at 152 (FOIA exemptions are "intended to have meaningful reach and application").  Furthermore, the redaction of records "is expressly authorized by FOIA, which indicates that Congress recognized that the policy of informing the public about the operation of its Government can be adequately served in some cases without unnecessarily compromising individual interests in privacy." *Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 284 (2d Cir. 2009) (citations omitted).

Most FOIA actions are resolved by summary judgment.  *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993).  Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In a FOIA case, the agency bears the burden of showing that exemptions have been properly applied.  *See Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).  "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Id.*

## II.    THE GOVERNMENT PROPERLY REDACTED THE NAME, ALIEN NUMBER, AND OTHER PERSONALLY INDENTIFIABLE INFORMATION  OF THE INDIVIDUAL IN THE POCR SAMPLE PURSUANT TO FOIA EXEMPTIONS (6) AND (7)(C)

ICE's determination to protect the personally identifiable information (or "PII") of alien detainees or third party individuals referenced within its POCR files was proper. DHS defines personally identifiable information as:

> Any information that permits the identity of an individual
> to be directly or indirectly inferred, including any other
> information which is linked or linkable to that individual
> regardless of whether the individual is a United States
> citizen, legal permanent resident, or a visitor to the U.S.
> PII includes any item, collection, or grouping of
> information about an individual that is maintained by an
> agency, including, but not limited to, education, financial
> transactions, medical history, and criminal or employment
> history.

*See DHS Privacy Incident Handling Guidance,* ¶ 1.4.9. at 9, January 26, 2012 (Ex. A to

Second Law Declaration).  DHS further identifies examples of PII as including:  names,

date of birth, mailing address, telephone number, Social Security number (SSN), email

address, zip code, biometric identifiers (e.g., fingerprints), photographic facial images, or

any other unique identifying number or characteristic, and any information where it is

reasonably foreseeable that the information will be linked with other information to

identify the individual.  *Id.*

The Privacy Act of 1974, 5 U.S.C. § 552a, generally bars disclosure of PII, absent

consent of the individual affected.  *See e.g., American Fed. of Gov. Employees, Local

1760 v. FLRA*, 786 F.2d 554, 556 (2d Cir.1986) ("*Local 1760*"); s*ee also United States

Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 766

(1989) ("*Reporters Committee*") (Privacy Act passed out of concern over impact of

computer data banks on individual privacy).  The Privacy Act excepts from its

prohibition against disclosure, however, information that must be made available under

the FOIA.  *FLRA v. U.S. Dept. of Veterans Affairs*, 958 F.2d 503, 505 (2d Cir. 1992).

Consequently, whether ICE must disclose the PII contained in the POCR Sample requires

a determination of whether such information would have to be disclosed under FOIA.

*See Local 1760*, 786 F.2d at 556; *FLRA v. United States Dept. of Treasury, Fin. Mgt. Serv.*, 884 F.2d 1446, 1450 (D.C. Cir. 1989).

**A.     The Government Properly Applied Both Exemptions 6 and 7(C) to the POCR Sample**

Exemption 6 exempts from disclosure information from personnel, medical, or other "similar files" whose release "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6),[4] while Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes" where disclosing them "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C).  Once a privacy interest is established, both exemptions require the Court to balance the privacy interests at stake against the public's interest in disclosure.  *See Reporters Comm.*, 489 U.S. at 755-56; *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 524 (S.D.N.Y. 2010) ("With respect to Exemption 7(C), a similar balancing of interests [as to Exemption 6] occurs."); Pls. Br. at 11 n. 8 ("Because the analyses for Exemptions 6 and 7(C) are so similar, this memorandum will analyze the application of both exemptions within the same discussion.").

The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).  The Supreme Court has interpreted Exemption 6 broadly, making clear that all information that

---

[4] ICE's POCR files constitute "similar files" within the meaning of Exemption 6.  "The phrase 'similar files' has a broad meaning and encompasses the government's 'records on an individual which can be identified as applying to that individual.'" *Associated Press*, 554 F.3d at 291 (*citing U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).

9

"applies to a particular individual" meets the threshold requirement for protection under this exemption. *Washington Post Co.*, 456 U.S. at 602; *see also New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (finding voice tapes from the space shuttle Challenger to be "similar files" because they identified crew members by the sound and inflection of their voices).

Similarly, Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  Like Exemption 6, Exemption 7(C) "call[s] for a balancing of the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *McCutcheon v. HHS*, 30 F.3d 183, 185 (D.C. Cir. 1994) (internal quotation marks omitted).  But as the Supreme Court explained, Exemption 7(C)'s privacy language is broader than that of Exemption 6 because the adverb "clearly" is omitted from Exemption 7(C), and Exemption 7(C) encompasses any disclosure that "could reasonably be expected to constitute" an invasion of privacy.  *Reporters Comm.*, 489 U.S. at 756.  Construing the public interest component of Exemption 7(C), courts have noted that the public interest "must be assessed in light of FOIA's central purpose," and that this purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  *Nation Magazine v.U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (quotation marks and citation omitted).  Rather, the information must "contribute significantly to public understanding of the operations or activities of the government . . . ." *Reporters Comm.*, 489 U.S. at 775 (emphasis added).

Exemptions 6 and 7(C) therefore protect the same privacy interests; the difference between them lies in "the degree of invasion . . . that will be tolerated before disclosure is prohibited." *FLRA*, 958 F.2d at 503 (rejecting the argument that Exemption 6 requires a greater privacy interest to trigger the balancing test).  Where both exemptions are implicated, a court appropriately applies the "stricter [Exemption 7(C)] evaluation of privacy interests." *Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002).[5]

### B.   The Redacted Information Contained in the POCR Sample Implicates a Clear Privacy Interest in Avoiding Public Disclosure of PII

The majority of redactions in this case involve ICE's decision to (a) redact PII in the POCR Sample, and (b) produce the remaining portions of the POCR Sample that it deemed segregable.  Documents have not been entirely withheld.[6]  Rather, ICE applied Exemptions 6 and 7(C) to protect the privacy of the individual detainee's PII.  The Amended Law Declaration explains that "ICE applied Exemptions 6 and 7(C) to protect from disclosure the names, phone numbers, alien registration numbers, indentifying aspects of the alien's case, (such as case history, chronology, employment prospects and history, education, and lists of convictions), of the alien who was the subject of the POCR review . . .".  Amended Law Decl. ¶ 23 (Leland Decl., Ex. 3).  Therefore, ICE redacted:

- details of the alien's criminal history (Data Points 6, 7, and 8);

- the location of the detainee's facility (Data Points 2 and 5);

- arrival details concerning the detainee's entry into the United States (Data Points 3, 4);

---

[5] The parties agree that the disputed records under Exemption 6 have been compiled for law enforcement purposes, bringing them within the ambit of Exemption 7(C) as well. Pls. Br. at 11, n. 9.

[6] *See* Pls. Br. at 6 ("An agency may not withhold entire documents or broad categories of documents when only a segregable portion is exempt from disclosure.").

- information regarding the detainee's travel document status and history (Data Points 10, 11, 20, 25, 26, 30, 31);

- information regarding medical or psychological issues (Data Points 12, 18, 23, 28); and

- agency comments or discussion concerning the alien (Data Points 1, 9, 15, 16, 17, 21, 22, 27, 32, 33, 34);

- special circumstances, such as national security concerns (Data Points 13, 14, 19, 24, 29).[7]

*See* Amended Law Decl. ¶¶ 21-25 (Leland Decl. Ex. 3); *Vaughn* Index (Leland Decl. Ex. 4); Data Points Chart, Exh 6.  ICE redacted this information because it "reasonably expected" that disclosure of this information could constitute an invasion of privacy. *Vauhgn* Index (Leland Decl. Exh 4, at 1); *U.S. Dep't of Defense*, 510 U.S. at 496-97 n.6. This is consistent with ICE guidance—which defines PII as "[*a*]*ny* information that permits the identity of an individual to be directly or indirectly inferred, including any other information which is linked or linkable to that individual regardless of whether the individual is a United States citizen . . ." (emphasis added), *DHS Privacy Incident Handling Guidance,* ¶ 1.4.9. at 9, January 26, 2012 (Ex. A to Second Law Declaration)— which, in turn, is consistent with Supreme Court jurisprudence, *see U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352, 380-81 (1976) (requiring that "personal references or other

---

[7] The Government acknowledges that *this* individual POCR Sample itself does not implicate PII concerns with respect to certain of the categories listed above such as medical condition, agency comments, or national security concerns.  But the redactions on the POCR Sample signify that ICE will need to redact this category of information for any individual that does have medical information, agency comments or national security information in his POCR file that reveals PII.  *See* Stipulation ¶ 6 (Leland Decl. Exh. 1) (POCR Sample intended to detail the *representative types* of FOIA exemptions ICE would claim over any future production called for by the Plaintiffs' remaining request). If the Government were to reproduce the POCR Sample to Plaintiffs on a "production" basis it would not have redacted this information, but it did so here to preserve its right to redact PII in any future production where PII would be revealed.

identifying information" be redacted from cadet discipline files); *see also Spirko v. U.S. Postal Service,* 147 F.3d 992, 997 (D.C. Cir. 1998) (finding a privacy interest in criminal histories, computer generated print outs of criminal activities of former suspects, and information from state, local and federal law enforcement agencies pertaining to suspects and former suspects); *Davis v. Dep't of Justice,* 968 F.2d 1276, 1281 (D.C. Cir. 1992) (private citizens mentioned in investigatory files enjoy a privacy interest).

Plaintiffs do not dispute that ICE must redact the name and alien number of the individual in the POCR Sample. *See* POCR Sample at 000001 (Leland Decl. Ex. 2). Plaintiffs also generally agree that a privacy interest exists where personally identifying information would be disclosed. Pls. Br. at 18 (*citing Rose,* 425 U.S. at 380). But Plaintiffs do not agree that PII goes beyond just names and social security numbers, and should be considered broadly to include any identifying information that permits the identity of the individual to be discovered. *See DHS Privacy Incident Handling Guidance,* ¶ 1.4.9. at 9, January 26, 2012 (Ex. AA to Second Law Declaration); *Rose,* 425 U.S. at 380-81. Here, Plaintiffs are incorrect.

The categories of information that ICE redacted under Exemptions 6 and 7(C) are information which, if revealed, would be reasonably expected to implicate the alien's privacy interests. For example, the individual in the POCR Sample is Liberian. *See* POCR Sample at 000001 (Leland Decl. Ex. 2). If that individual is the only Liberian to have crossed into the United States through a small Arizona border town,[8] or if he were the only Liberian with a rare or unusual medical condition,[9] or the only Liberian with a

---

[8] Data Points 3, 4 (Leland Decl., Exh. 2).
[9] Data Points 12, 18, 23, 28, *Id.*

particular criminal history,[10] it would be relatively easy for someone to specifically

identify that person, or for the alien himself to recognize the public disclosure of his own

file and sue ICE for privacy act violations, even though his name was not specifically

disclosed.[11]   *See Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1491 (D.C. Cir. 1984)

(fact that FOIA requester was able to piece together the identities of informants from

disparate information "in no way undermine[d]" the privacy interests of those

individuals).

      The redacted information in these files, including the medical files (Pls. Br. at 17),

arrival dates and locations (*id.*)*,* and special circumstances such as national security (*id.* at

18), cannot be examined without reference to their overall connection to an alien's PII.

For example, if Plaintiffs' Motion is granted, the public will learn (a) the arrival date and

entry point of the alien, (b) the facility at which he is being held, (c) his nationality

(which ICE has not redacted), (d) his medical condition, (e) his criminal history, (f) any

national security implications, and (g) further agency comments which may reveal

additional personally identifiable information.   *See* Data Points Chart (Leland Decl., Ex.

6).  This type of information is so collectively unique that even without a name or alien

---

[10]   Data Points 6, 7, 8, *Id.*

[11]   Other details, like the location where the detainee is being held, agency comments
concerning the particular disposition of his case, or the detainee's connection to terrorism
or national security issues could also reveal the identity of the detainee, particularly
where those comments are combined with the unique nationality of the detainee.  *See
Rose*, 425 U.S. at 380-81 (recognizing privacy interest in identifying information about
cadets redacted from case summaries of ethics hearings at the Air Force Academy);
*Spirko,* 147 F.3d at 997.

number, it is still a personally identifying characteristic, which implicates a classic

privacy interest—the right of an individual to control access to his own data.[12]

In *Reporters Committee,* the Supreme Court held that "[t]he privacy interest in a

rap sheet"—which is very similar to the criminal and detainee histories contained in the

POCR files requested here—"is substantial."  489 U.S. at 771.  Likewise in *Rose,* which

is frequently cited by Plaintiffs, the Supreme Court held that a request for cadet discipline

histories required that "personal references *or other identifying information*" be redacted.

*Rose*, 425 U.S. at 380-81 (emphasis added).  That decision squarely supports ICE's

redactions here, because ICE did as the *Rose* court instructed:  employed redaction, a

"familiar technique," to insure that the balance between disclosure and the privacy

exemptions in the FOIA remain "workable concepts."  *Rose,* 425 U.S. 381-82.  Indeed,

the *Rose* court went much further than ICE did in the present case, holding that, if in the

opinion of the lower court the redaction of personal references and other identifying

information in Air Force cadet files "is not sufficient to safeguard privacy," then the

summaries "should not be disclosed" at all.  *Id.*

---

[12]  The Second Circuit presciently recognized the problem that vast collections of PII posed for personal privacy more than twenty years ago, long before mobile phones or the internet had taken root in American households:

> It used to be thought that citizens had a right to pass
> through this world without their successes and failures or
> comings and goings being the subject of comment,
> discussion or publication.  But the advent of the data
> computer bank has nearly swept away that long-held notion
> [and] has virtually stripped from the individual's grasp
> control of information concerning his or her person . . .

*FLRA*, 958 F.2d at 504 (holding that disclosure of federal employees' names and addresses were prohibited under FOIA); *see also Reporters Comm.*, 489 U.S. at 763 (an individual has an interest in controlling information concerning his or her person).

Here, each POCR "file" relates to one specific, individual detainee.  Second Law Decl. ¶ 13.  That fact, plus the unique personal information contained in each file (*id.* ¶ 14), means that ICE must view the information in the file as a whole and redact more broadly than just names and alien numbers to ensure that privacy is protected.  PII includes "any item, collection, or grouping of information about an individual . . . including . . . education, financial transactions, medical history, and criminal or employment history."  *DHS Privacy Incident Handling Guidance,* ¶ 1.4.9. at 9 (Ex. A to Second Law Declaration).  The Government's Amended Declaration and *Vaughn* index further explains that this individual's criminal history, arrival dates and port of entry, and medical and psychological issues were redacted because *inter alia* (a) the detainee identified in the POCR Sample did not consent to disclosure of his information, (b) the disclosure of his PII could lead to identify theft, and (c) disclosure could also lead to embarrassment, harassment, or undue public attention.  *Vaughn* Index (Leland Decl. Ex. 4 at 1).[13]

The more significant the type of privacy interest (as in the case of information related to law enforcement proceedings) the lighter the burden is to preclude disclosure.  *See FLRA,* 958 F.2d at 509 ("disclosure only need be *reasonably expected* to result in an unwarranted invasion").  "FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests."  *FLRA*, 958 F.2d at 510.  Thus, "once a more than *de minimis* privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA."  *Id*.

---

[13]  An agency's declarations in support of its determination must be "accorded a presumption of good faith."  *Carney,* 19 F.3d at 812.

16

### C.       The Detainee's Privacy Interests Outweigh Any Public Interest in the Disclosure of His Personally Identifiable Information

"Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure." *Nat'l Record Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). The Supreme Court has made clear that only one interest is relevant: "to open agency action to the light of public scrutiny." *Reporters Comm.*, 489 U.S. at 772 (internal quotation omitted). But in balancing the privacy interests, Plaintiffs cannot establish that the disclosure of the redacted information in the POCR files would "shed any additional light on the Government's conduct of its obligation," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991), or that the PII in the files will "spark debate" (Pls. Br. at 14) in a way that is sufficient to merit the public disclosure of the wealth of PII in ICE's POCR files.

The minimal value of learning how personal criminal histories, medical histories or other factors affect ICE's implementation of *Zadvydas* (Pls. Br. at 14-17) is far outweighed by the deeply invasive personal nature of Plaintiffs' request,[14] combined with the relative ease with which the public may be able to potentially use PII in the POCR files to uncover the true identity of the individual in question. Plaintiffs' request would publicly expose the most intimate private details, including (from among many real-world examples) whether the detainee is HIV positive, suffers from a sexually

---

[14] As has been mentioned, Plaintiffs have failed to demonstrate that they obtained written third party authorizations to request these POCR files from ICE, as they are required to do. *See* 6 C.F.R. § 5.3(a) ("If you are making a request for records about another individual, [DHS requires] a written authorization signed by that individual permitting disclosure of those records"); 6 C.F.R. § 5.21(f) (You must provide "a statement from the individual certifying the individual's agreement that records concerning the individual may be released to you").

transmitted disease, is a victim of genital mutilation, was detained under suspicion of terrorism, is seeking asylum, was tortured by a foreign regime, was arrested for child abuse, pedophilia, or sexual assault of a child, or is a victim of domestic violence.[15]  *See Weisberg,* 745 F.2d at 1491 (holding that despite public interest, balance of harms tilts in favor of protecting privacy interest in law enforcement files); *Lesar v. Dep't of Justice*, 636 F.2d 472, 486-88 (D.C. Cir. 1980) (public interest in assassination of Dr. Martin Luther King did not outweigh privacy interest in individuals named in law enforcement files).  That the Plaintiffs' goal is to assist aliens like the individual in the POCR Sample is not relevant to the analysis.  *Compare* Pls. Br. at 16 (citing "concerns about uniformity in the POCR process") *with Associated Press,* 554 F.3d at 287 (even though "a detainee might want to voluntarily disclose information publicly[, that] does not authorize the government to disclose that information, and the district court cites no law to support that proposition, nor do we find any").

On the contrary, the individual named in the Government's POCR Sample has a strong interest in avoiding any embarrassment or retaliation that may be caused by the Government publicly identifying him as an illegal alien and, for example, exposing his prior criminal record, the county in which the crime occurred and the nature of the conviction.  Such a public disclosure could result in serious consequences for that individual in his community.  *See Rose*, 425 U.S. at 377 (upholding the Air Force's decision to withhold the names of cadets accused of disciplinary infractions because identification "could expose the formerly accused men to lifelong embarrassment, perhaps disgrace").

---

[15] Among the Data Points that would potentially contain this type of information are 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 22, 23, 24, 27, 28, 29, and 34.

The individual in the POCR Sample also has a privacy interest in avoiding

unwanted attention or public scrutiny.  *See Reporters Comm.*, 489 U.S. at 769

(recognizing a "privacy interest in keeping personal facts away from the public eye").

Release of this individual's PII in connection with his immigration status implicates this

interest because these facts are "the type of information that a person would ordinarily

not wish to make known about himself or herself."  *Associated Press*, 554 F.3d at 292.

 Plaintiffs' request is deeply invasive and fails to surmount the high hurdle

required to obtain law enforcement-related PII.  "It is well established that identifying

information such as names, addresses, and other personal information falls within the

ambit of privacy concerns under FOIA."  *See Associated Press,* 554 F.3d at 274;

*Weisberg,* 745 F.2d at 1491 (finding that privacy balance favored non-disclosure where it

was clear that collection of third-party records sought "were compiled for law

enforcement investigatory purposes").  Because the public interest that Plaintiffs claim

over the POCR Sample does not outweigh the privacy interests of the detained individual,

the balance of harms tilts in favor of the Government's withholding of PII pursuant to

Exemptions 6 and 7(C).  *See Associated Press*, 554 F.3d at 289.

## III.  PURSUANT TO THE STIPULATION, THE GOVERNMENT RESERVES THE RIGHT TO APPROPRIATELY REDACT FOR PRIVILEGE

FOIA Exemption 5 shields from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation

with the agency."  5 U.S.C. § 552(b)(5).  "This exemption encompasses traditional

discovery privileges, such as the attorney-client and work-product privileges."  *Wood v.*

*FBI*, 432 F.3d 78, 83 (2d Cir. 2005).  "[A]gency documents which would not be

obtainable by a private litigant in an action against the agency under normal discovery

rules (*e.g.*, attorney-client, work-product, executive privilege) are protected from

disclosure under Exemption 5 . . . ."  *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d

Cir. 2002) (quoting *Grand Cent. P'ship*, 166 F.3d at 481).[16]

By citing Exemption 5 in the Amended Law Declaration, the Government did not

intend to "indiscriminately shield all decision-making by [its] public officials."  Pls. Br.

at 7.  In fact, the Government acknowledges that the POCR Sample does not contain

Exemption 5-related material.  However, as agreed to by the parties in the Stipulation, the

POCR Sample was intended to detail the *representative types* of FOIA exemptions that

ICE would claim over any future production called for by the Plaintiffs.  Stipulation ¶ 6

(Leland Decl. Ex. 1).[17]  The Government redacted the POCR Sample at thirteen "data

points" simply to illustrate the places where it anticipated encountering a privilege issue

in its future POCR production.[18]

Because a POCR "file" is a collection of documents and information concerning a

detainee (Second Law Decl. ¶ 13), each POCR file may differ from the POCR Sample.

For example, "Data Point" 1 in the POCR Sample contains a space for "additional

comments or information."  *See* POCR Sample (Leland Decl., Ex. 2).  Data Points 9, 10

---

[16]  The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice of services."  *Tax Analysts v. IRS,* 117 F.3d 607, 618 (D.C. Cir. 1997) (citation omitted).  Similarly, the deliberative process privilege, applies to materials that are part and parcel of the process of internal agency decision-making. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (privilege protects documents comprising part of a process by which policies are formulated).

[17]  *See also* Amended Law Decl. (Exh. 3 to Leland Decl.) at n. 3 ("[The POCR Sample] is intended to be representative"); ¶ 16 ("While the particular sample provided . . . did not contain attorney-client privileged information, an individual's POCR 'file' could contain such information").

[18]  The Data Points applicable to this Exemption are 1, 9, 10, 11, 12, 15, 16, 20, 26, 31, 32, 33, 34.  *See* Data Point Chart at Leland Decl., Exh. 6.

and 11 are large "free-text" boxes in which an ICE case agent is instructed to enter "discussions at interview," the alien's "attempts to get travel documents and status," and "ICE's attempts to obtain a travel document and status," respectively. *Id.* Likewise, the POCR Sample contains an informational email attached to the back of the file. *See* POCR Sample (Law Decl. Ex. 2) at 000022.

Other files will no doubt contain other unique information, including the likely possibility that legal memoranda will be appended to certain files. Thus, while this particular POCR Sample did not contain privileged information, other files likely will. *See, e.g.,* Amended Law Decl. ¶ 14 ("an individual's POCR 'file' may contain recommendations from ICE's Office of the Principal Legal Advisor"). Despite these distinctions, the Government largely agrees with Plaintiffs' expression of the parameters of Exemption 5, and therefore there may not be any controversy for the Court to resolve concerning the Government's invocation of Exemption 5. For example, the Government agrees that in order to secure protection under the deliberative process privilege, an agency must show that a document is both "predecisional" and "deliberative." *Grand Cent. P'ship. Inc. v. Cuomo*, 166 F.3d 473,482 (2d Cir. 1999). Likewise, the Government agrees with Plaintiff that in any future production it should not apply the deliberative process privilege to "a discrete decision regarding a specific individual" or to the "application of a pre-existing policy to a particular set of circumstances." Pls. Br. at 9.

Thus, the Government intends to assert Exemption 5 only in appropriate, limited circumstances.[19]  Nevertheless, the Government is preserving its right to redact attorney client privileged and deliberative process items from any future POCR "file" production.

## IV.  THE GOVERNMENT PROPERLY REDACTED LAW ENFORCEMENT PROCEDURES PURSUANT TO FOIA EXEMPTION 7(E)

Exemption 7(E) contains two clauses.  5 U.S.C. § 552(b)(7)(E).  Exemption 7(E)'s first clause provides categorical protection to information that "would disclose techniques and procedures for law enforcement investigations or prosecutions," without requiring any showing of harm as a result of disclosure.  5 U.S.C. § 552(b)(7)(E); *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) ("*Lowenstein*").  While this clause is generally limited to techniques or procedures that are not well-known to the public, "[t]here is no principle . . . that requires an agency to release all details concerning . . . techniques simply because some aspects of them are known to the public."  *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) (even commonly known procedures may be protected from disclosure if disclosure could reduce or nullify their effectiveness).

Pursuant to Exemption 7(E), the Government redacted Data Points 13, 14 and 16 ("POCR Criteria Worksheet" and "Custody Determination comments"); 18, 23 and 28 (Medical/Psychological Issues); and 7, 19, 24 and 29 (National Security/Special Interest Case comments).[20]  These factors as a whole—including the medical criteria and national

---

[19]  Indeed, if the present POCR Sample had been redacted for production—as opposed to being a representative sample—it would not contain any Exemption 5 redactions.
[20]  Although Data Point 7 may appear to contain "criminal history," it actually relates to national security/special interests because it consists of "indicators of third agency or

22

security comments—implicate the procedures used in evaluating whether or not to

continue detention.[21]  Amended Law Decl. (Leland Decl. Ex. 3) ¶ 27.  They are

considered within the context of ICE's evaluation of 8 C.F.R. § 241.14 ("Continued

Detention of Removable Aliens on Account of Special Circumstances"), which is a

published regulation.  *Id.*  But *how* ICE applies those factors to a POCR determination is

not public knowledge.  *Id.* at ¶ 28.  Indeed, the *Vaughn* index explains that if this

information were revealed, it would demonstrate how law enforcement officers weigh the

factors in conducting POCR reviews.  *Vaughn* Index (Leland Decl. Ex. 4) at 2-3.

Moreover, Plaintiffs are incorrect that these factors cannot be a "technique or

procedure."  Pls. Br. at 19-20.  *See Lowenstein*, 626 F.3d at 680-82 (finding that criteria

used to rank priority of immigration enforcement cases constitutes techniques and

procedures rather than guidelines); *Ahmed v. U.S. Citizenship and Immigration Services,*

No. 11–cv–6230 (CBA), 2013 WL 27697, at *4-5 (E.D.N.Y. Jan. 2, 2013) (protecting

techniques for vetting of naturalization applicants who might pose national security

concerns); *Tran v. DOJ,* No. 01-0238, 2001 WL 1692570, at *3 (D.D.C. Nov. 20, 2001)

(concluding that an agency form used when agencies share information from immigration

records was properly withheld because it would reveal law enforcement techniques).

But the Government also properly withheld this information under the second

clause of Exemption 7(E), which protects "guidelines for law enforcement investigations

---

specialized task force involvement," such as, hypothetically, the Joint Terrorism Task
Force.  *Vaughn* Index (Leland Decl. Ex. 4) at 2.  How law enforcement officers track
other agencies' involvement is a law enforcement technique or guideline that does not
assist the public in understanding how ICE carries out its POCR responsibilities.  *See id*.

[21] In justifying the application of Exemption 7(E), the agency may describe the general
nature of the technique while withholding the full details.  *Coleman v. FBI*, 13 F. Supp.
2d 75, 83 (D.D.C. 1998).

or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." *See* 5 U.S.C. § 552(b)(7)(E); *Lowenstein*, 626 F.3d at 682 (whether a tax investigator is told only to bring charges against those who evade more than a certain enumerated dollar amount in taxes is a "guideline").[22]  This is exemplified by the Government's concern that even though it is generally known that ICE performs POCR reviews, the specific contents of that review, including the combination of factors that result in a "favorable" review are not publicly known, and if revealed, *would enable individuals to manipulate the process and circumvent the law* by taking proactive steps to deceptively tailor their file, pending Court pleadings, and case circumstances to meet the criteria for a "favorable" POCR decision.  Amended Law Decl. (Leland Decl. Ex. 3) ¶¶ 27-28 (emphasis added).

More specifically, the *Vaughn* index explains that if this information were revealed, it would demonstrate how law enforcement officers weigh the factors in conducting POCR reviews, which would in turn "permit people seeking to violate the immigration and customs laws and regulations to circumvent the law by taking proactive steps to fraudulently avoid continued detention." (Leland Decl. Ex. 4 at 3).  Thus, if an alien learned which medical criteria, national security concerns, or other criteria influenced a POCR decision, that detainee could tailor his conduct to manipulate the desired outcome.  *See Soghoian v. U.S. Dep't of Justice*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) ("Knowing what information is collected, how it is collected, and more importantly, when it is *not* collected, is information that law enforcement might

_____

[22] Under the second prong, the expectation of risk need not be certain, as the statute merely requires that the risk "could reasonably" be expected.  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1192-93 (D.C. Cir. 2009).

reasonably expect to lead would-be offenders to evade detection"); *Asian Law Caucus v. U.S. Dept. of Homeland Sec.,* No. C 08-00842 CW, 2008 WL 5047839, at \*5 (N.D. Cal. Nov. 24, 2008) (withholding topics for questioning travelers attempting to enter United States).

Indeed, some criteria, such as the National Security/Special Interest Data Points (7, 19, 24 and 29)[23] and the Medical Data Points (18, 23, 28) will *always* need to be redacted, even when they contain no information in them.  The alternative—redacting only the files where there is a national security or medical interest—would impart just as much information as if ICE did not redact that box at all.  *See, e.g., Catledge v. Mueller*, 323 F. App'x 464, 467 (7th Cir. 2009) (affirming agency's refusal to confirm or deny whether plaintiff was "a subject of the [national security] letters" because it "would reveal the circumstances under which the FBI has used this technique").

Accordingly, because disclosure of guidelines concerning ICE's criteria for making post-order custody determinations "could reasonably be expected to risk circumvention of the law," ICE properly withheld this information under the second clause of Exemption 7(E).

## CONCLUSION

For all of the foregoing reasons, DHS respectfully requests that the Court grant its cross-motion for summary judgment.

---

[23] The *Vaughn* Index explains that the "disclosure of these techniques and practices could permit people seeking to violate immigration and customs laws and regulations to circumvent the law by taking proactive steps to determine the agencies [sic] awareness of their involvement in National Security matters, and to fraudulently obtain a favorable adjudication on their POCR file."  Leland Decl. Ex. 4 at 3.

Dated:     New York, New York
           May 17, 2013

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for Defendants*

                          By:     ___/s/ Louis A. Pellegrino___
                                        LOUIS A. PELLEGRINO
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Telephone: (212) 637-2689
                                        Facsimile:  (212) 637-2686
                                        Email: louis.pellegrino@usdoj.gov